BOSTON STEEL AND IRON COMPANY *vs.* JENNIE D. STEUER.

Suffolk.    January 13, 1903. — March 10, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Practice, Civil,* Exceptions.    *Bills and Notes.*    *Negotiable Instruments Act.*

In an action for work and materials furnished for a building of the defendant, a married woman, the trial judge excluded evidence offered by the defendant of her instructions to her husband "not made in the presence of the plaintiff or any one representing him." At the argument of exceptions the plaintiff contended that the exclusion might be justified on the ground, that it did not appear that the instructions were not given in a private conversation between husband and wife. *Held,* that this ground was not open to the plaintiff, as the words quoted above showed that the exclusion was on the other ground there stated.

If a woman delivers to her husband her check for a certain amount made payable to a certain creditor and instructs her husband to apply it toward the payment of her debt, and thereupon the husband fraudulently hands the check to the creditor to be applied as a payment upon a debt of his own to the same creditor, and it is accepted as such by the creditor in good faith, the creditor is a holder in due course of the check within the negotiable instruments act, St. 1898, c. 533, § 52, R. L. c. 73, § 69, and the payment on the husband's debt is good. The fact that the creditor is the payee of the check does not prevent him from becoming a *bona fide* purchaser of it.

If a woman delivers to her husband a check signed by her and made payable to a certain creditor, but with the amount left blank, instructing her husband to apply it in payment of her debt, and the husband delivers it to the creditor with the blank unfilled, to be used as a payment upon a debt of his own to the same creditor, and allows the creditor with his consent to fill in the blank with a certain amount as such payment, the check is an incomplete instrument under the negotiable instruments act, St. 1898, c. 533, § 14, R. L. c. 73, § 31, and in an action by the creditor against the woman for her indebtedness to him, alleged to be unpaid, she can introduce evidence to show that by the authority actually given her husband had no right to treat the check as he did or to apply it otherwise than in payment of her debt, and that she should be credited with the amount of it.

CONTRACT for $1,823.25 for work done and materials furnished for a building of the defendant numbered 811 on Beacon Street in Boston. Writ dated April 11, 1899.

At the trial in the Superior Court before *Bishop,* J., without a jury, the judge excluded certain evidence offered by the defendant and refused to make certain rulings requested by the

defendant.   He found for the plaintiff in the sum of $2,043.86 ; and the defendant alleged exceptions.

*E. Greenhood*, for the defendant.

*J. K. Berry*, for the plaintiff.

LORING, J.   The only question in issue between the parties in this case is the right of the defendant to be credited with two sums of $200 and $400, respectively, under the following circumstances.

On December 31, 1898, the defendant's husband owed the plaintiff $1,781.30, for iron work furnished by it to him in the construction of a house number 819 Beacon Street.   On being pressed for payment, the defendant's husband, on January 21, 1899, delivered to the plaintiff the defendant's check for $200, payable to the plaintiff.   It is stated in the bill of exceptions that on February 2, 1899, " he paid the plaintiff the further sum of $400 in a check made by said Jennie D. Steuer."   But it appears from the auditor's report, which was before the court and is referred to in the bill of exceptions, that the plaintiff's manager's name was Newcomb, and that his story was that the check for $400 " was brought to him at his office on Devonshire Street by Mr. Steuer in response to further demands for money, and that it was made out in blank and filled up by himself, Mr. Steuer being unwilling that it should be made for more than two hundred dollars, while Mr. Newcomb insisted that it should be for the larger amount and so made it, with Mr. Steuer's consent, and applied it to his debt."   The defendant's story was " that she gave the check to Mr. Newcomb at her house."

In addition to the iron furnished the defendant's husband for 819 Beacon Street, the defendant's husband had ordered two iron columns and a base plate from the plaintiff for another house, No. 811 Beacon Street, which the plaintiff supposed was Steuer's until his manager was told on March 10 that it belonged to the defendant's wife.   These two columns and base plate were delivered on December 22, 1898, and at the rate charged in the bill of items were worth $150.35.   From December to March there were negotiations between the defendant's husband and the plaintiff for a contract by which all the iron work for 811 Beacon Street should be furnished by the plaintiff for a fixed sum, payments on account to be made as each floor was

finished ; and on or about March 1, 1899, the plaintiff's manager submitted to the defendant a written contract to this effect. On March 10 this was returned by the defendant's husband with the statement already referred to, that 811 Beacon Street belonged to his wife, and that the contract should be made with her.   No written contract was ever made between the plaintiff and the defendant, but the plaintiff went forward and delivered the iron work for two of the six stories of the house, part being delivered before March 10 and part after that date.   The last was delivered on March 18, when the plaintiff stopped because it had not been paid for what it had done.   Thereupon this action was brought to recover the reasonable value of the materials furnished and work done.

At the trial the defendant contended "that the amount of said payments should be credited to her in this action on the ground that they were payments required by the plaintiff to be made in advance on account of her said building numbered 811 Beacon Street, and that the checks were given to her said husband, as her agent, to make such payments," and " offered evidence of her instructions to her husband as to the use and application of said checks, not made in the presence of the plaintiff or any one representing him, and claimed that the same should be admitted in evidence.   The court declined to admit the same and the defendant duly excepted to the exclusion." The other exceptions taken at the trial have been waived, and the question raised by this exception is the only matter now before us.

The plaintiff has argued that it did not appear but that these instructions were given in a private conversation between husband and wife.   But on a fair construction of the bill of exceptions we do not think that the evidence can be taken to have been excluded on that ground.   It is stated there that the " defendant offered evidence of her instructions to her husband as to the use and application of said checks, not made in the presence of the plaintiff or any one representing him."   This must be taken to be a statement of the ground of the objection, and the ruling must be taken to be a ruling that competent evidence was offered and was excluded because not made in the presence of the plaintiff or of some one representing it.

The judge before whom the case was tried without a jury found "that neither of said payments was required by the plaintiff to be made in advance on account of her said building numbered 811 Beacon Street, and that neither of them was made according to any agreement for payment to be made on account of said 811 Beacon Street, and that no floor in said building was completed at the time either of said payments was made, and that said payments were made by said Bernard Steuer on account of his building numbered 819 Beacon Street, and were received by the plaintiff on account therefor."

This finding makes the evidence excluded immaterial so far as the check for $200 is concerned. If this evidence had been admitted, the defendant's case on the $200 check would have been this: A check payable to the plaintiff is handed by the drawer to her husband, to be delivered by him to the plaintiff in payment of a debt to become due from the drawer of the check to the payee, and is fraudulently handed by the husband to the payee of the check, in payment of a debt due from him to the payee, and is accepted by the payee in good faith in payment of that debt.

In such a case the payee of the check is a *bona fide* purchaser of the check for value, without notice, and the drawer could not set up her husband's fraud in defence of the check, nor maintain an action for money had and received after payment of it on discovering the fraud.

The fact that the plaintiff is the payee of a negotiable security does not prevent him from becoming a *bona fide* purchaser of it at common law, with all the rights incident to a purchaser for value thereof without notice. That was decided in *Watson* v. *Russell*, 3 B. & S. 34, and affirmed in the Exchequer Chamber in the same case. 5 B. & S. 968. To the same effect are *Poirier* v. *Morris*, 2 El. & Bl. 89, *Nelson* v. *Cowing*, 6 Hill, 336, 339, *Munroe* v. *Bordier*, 8 C. B. 862, and *Armstrong* v. *American Exchange Bank*, 133 U. S. 433, 453. The case of *Fairbanks* v. *Snow*, 145 Mass. 153, might have been decided on this ground but was disposed of on common law principles.

That payment of a pre-existing debt makes the holder a purchaser for value in this Commonwealth was settled law before the negotiable instruments act was enacted. *Blanchard* v. *Ste-*

*vens,* 3 Cush. 162. *Stoddard* v. *Kimball,* 6 Cush. 469. *Good-win* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 199. *National Revere Bank* v. *Morse,* 163 Mass. 383. *Holden* v. *Phœnix Rattan Co.* 168 Mass. 570.

The checks in question in the case at bar were given after the negotiable instruments act (St. 1898, c. 533; R. L. c. 73) went into effect, and are governed by its provisions. The plaintiff is a holder in due course of the $200 check within R. L. c. 73, § 69. This section is taken from § 29 of the English bills of exchange act of 1882, and *Watson* v. *Russell* is cited in Chalmers, Bills of Exchange, (5th ed.) 89, as an example of a person who is a holder in due course within that section.

It was stated by Lord Russell in *Lewis* v. *Clay,* 67 L. J. Q. B. (N. S.) 224, that a payee of a promissory note cannot be a holder in due course within § 29 of the English bills of exchange act of 1882. In *Herdman* v. *Wheeler,* [1902] 1 K. B. 361, 372, it was pointed out that this statement of Lord Russell's was *obiter,* and it was also pointed out that in *Herdman* v. *Wheeler,* as in *Lewis* v. *Clay,* it was not necessary to pass on that point. The case of *Watson* v. *Russell,* 3 B. & S. 34; *S. C.* 5 B. & S. 968, does not seem to have been brought to the attention of the court in either of these cases. And in neither case does the court seem to have taken into consideration the practice of a check being procured drawn by another to be used in paying a debt due from the person procuring the check to the person to whom the debtor has had the check made payable. The practice is recognized in case of foreign bills of exchange, and the person procuring the bill is known technically as the remitter of it. See *Munroe* v. *Bordier,* 8 C. B. 862, where it was held that the payee of a foreign bill, who took it from the remitter of it for value, was a *bona fide* purchaser for value. It was this practice which was applied in *Watson* v. *Russell,* 3 B. & S. 34, in case of a check. In our opinion, a check received by the payee named in it, in payment of a debt due from the remitter of the check, is received by a holder in due course within § 69 of the negotiable instruments act, St. 1898, c. 533, R. L. c. 73, and that is so even if we should follow the decision made in *Herdman* v. *Wheeler,* [1902] 1 K. B. 361, and hold that a payee never can be a holder in due course to whom the bill has been "negotiated" within

the last clause of § 31 of our act, R. L. c. 73, which is taken from § 20 of the English bills of exchange act of 1882 (45 & 46 Vict.) c. 61. The rule that payment of a pre-existing debt makes the holder a holder for value was adopted in R. L. c. 73, § 42.

But so far as the check for $400 is concerned, we are of opinion that the evidence should have been admitted. If the defendant's story were found to be true, namely, that she handed the check to the plaintiff's manager at her house, this check would stand on the same footing as the other. But the story of the plaintiff's manager was that the check was brought to him by the defendant's husband, signed in blank by the defendant, and that it was filled up by him for the sum of $400, with the husband's consent. We assume in favor of the plaintiff that this is to be interpreted to mean that the only blank in the check, when it was brought to the plaintiff's manager by the defendant's husband, was in the amount for which it was to be drawn.

It had been held in England before the bills of exchange act in 1882, that such a piece of paper is not a check; that one who buys it buys an incomplete instrument and his rights depend upon the real authority which the signer had in fact given in the matter. *Awde* v. *Dixon,* 6 Exch. 869. See also *Hatch* v. *Searles,* 2 Sm. & G. 147; *Hogarth* v. *Latham,* 3 Q. B. D. 643; *Watkin* v. *Lamb,* 85 L. T. (N. S.) 483; *France* v. *Clark,* 26 Ch. D. 257, 262. And see *Ledwich* v. *McKim,* 53 N. Y. 307. Such an incomplete instrument is *prima facie* authority to fill in the blank. *Crutchly* v. *Mann,* 5 Taunt. 529. *Swan* v. *North British Australasian Co.* 2 H. & C. 175, 184. But this *prima facie* authority, as we have said, may be met by evidence of what authority was in fact given, as was done in *Awde* v. *Dixon,* 6 Exch. 869. If the blanks are filled up before the instrument is negotiated, it does not lie in the maker's mouth to set up that it was incomplete when delivered by him. In such a case, a plaintiff who buys for value without notice gets the rights of a *bona fide* purchaser for value of a negotiable instrument; and the fact that there was no authority for filling up the blanks as they were filled up, or the fact that the paper was otherwise wrongfully dealt with, is no defence. *Schultz* v. *Astley,* 2 Bing. N. C. 544. *Foster* v. *Mackinnon,* L. R. 4 C. P. 704, 712.

In this Commonwealth it was held on the other hand that a note with a blank for the payee's name was a promissory note and not an incomplete paper which might be made into a promissory note. *Ives* v. *Farmers' Bank*, 2 Allen, 236. And in *Frank* v. *Lilienfeld*, 33 Gratt. 377, it was held that the purchaser in good faith of a note in printed form indorsed by the defendant, where the date, payee's name and amount had been left blank, had an absolute right to fill in the amount advanced thereon and to fill up the other blanks. It also has been held here, as it has been held in England, that such a blank, in the absence of other evidence, might be filled in by a *bona fide* purchaser ; see *Androscoggin Bank* v. *Kimball*, 10 Cush. 373; and that a *bona fide* purchaser of such a paper which is filled before it is negotiated, has the rights of a purchaser for value without notice. See *Whitmore* v. *Nickerson*, 125 Mass. 496 ; *Binney* v. *Globe National Bank*, 150 Mass. 574. See also in this connection *Herdman* v. *Wheeler*, [1902] 1 K. B. 361.

It is not necessary to consider how a blank check would be dealt with in Massachusetts at common law, where the amount in place of the name or date is lacking. The negotiable instruments act, R. L. c. 73, § 31, adopted the English law on this point, and it follows that if Newcomb's story is to be believed, the blank check brought to him must be treated as an incomplete instrument and not as a check.

The defendant further contends that it was inadmissible to show the real authority given to the husband in the absence of the plaintiff, and cites in support of that contention *Markey* v. *Mutual Benefit Ins. Co.* 103 Mass. 78, 93, and *Byrne* v. *Massasoit Packing Co.* 137 Mass. 313. These are cases where the act done was within the ostensible scope of the authority given an agent, and for that reason the real authority could not be invoked. The only act relied on as giving ostensible authority to the husband in the case at bar was putting him in possession of the blank check. There was no more ostensible authority here than there was in *Awde* v. *Dixon*, 6 Exch. 869, *Hogarth* v. *Latham*, 3 Q. B. D. 643, or *Watkin* v. *Lamb*, 85 L. T. (N. S.) 483. An incomplete check gives an authority to fill it up which is only a *prima facie* authority. It does not import an ostensible authority to fill it up which is absolute.

The plaintiff's rights under the blank check for $400, and to the money received for it, depend upon the authority actually given by the defendant when she signed it, and the evidence offered should have been admitted in respect of the credit claimed for the $400 paid under the blank check.

The entry must be,

*Exceptions sustained.*