## J. V. Manussier et al., Appellants, v. William Wright, Appellee.

1. NEGOTIABLE INSTRUMENTS—*sections 14 and 52 of Act of 1907 construed.* A bank who acquires a note from the original payee to whom it is given is not "a holder in due course" within the meaning of section 14 of the Act of 1907 unless at the time it became the owner thereof such note "was complete and regular upon its face," or unless the same was filled up and made complete and regular strictly in accordance with the authority given by the maker.

2. INSTRUCTIONS—*estoppel to complain.* A party cannot be heard to complain of an instruction where he has procured one of like character to be given on his own behalf.

Assumpsit. Appeal from the Circuit Court of Hancock county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed October 18, 1910.

WILLIAM H. HARTZELL and SEYMOUR L. McCRORY, for appellants.

CHARLES J. SCOFIELD and J. PAUL CALIFF, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit by appellants, partners doing business as The Basco Bank, against appellee Wright and one Massie, for the recovery of the amount due upon a certain promissory note signed by Wright and Massie, for the sum of $1,420.20, upon which, under date of October 31, 1908, there was endorsed a credit of $455.68, leaving a balance due thereon at said date of $964.52. Judgment was rendered aginst Massie by default. To the declaration appellee filed the general issue and a special verified plea denying the execution of the note. The jury returned a verdict in favor of the defendant. Judgment was rendered thereon in bar of action and for costs, to reverse which the plaintiff prosecutes this appeal.

The evidence shows that the appellants on June 4, 1908, and for several years prior thereto, had been engaged in the banking business in the town of Basco, Hancock county, Illinois. Massie was a farmer and stock dealer, residing in the vicinity of Basco. On that day he was indebted to said bank in the sum of $1,420.20, upon an overdue note and overdraft account, of which the bank was demanding payment. Appellee testified that in February or March, 1908, Massie came to his farm, and told him he wanted to buy some cattle to make out a car-load, and wanted to borrow $300 or $350 for that purpose, and asked appellee to sign a note with him for the amount; that he signed the note to the Basco Bank, with the blanks for the amount, date and time when due not filled out, and that the note was to be filled out for from $300 to $350 for the purpose above stated. Massie testified that he told ap-

pellee he wanted to straighten up at the Basco Bank; that he had a note there, and an overdraft, the amount of which he did not state, and that appellee signed the note for that purpose. The evidence shows that Massie carried the note for some time, and then, in the early part of June, 1908, mailed the same to the bank; that upon receipt of the same, the cashier of the Basco Bank, and one of appellants, filled the blanks in the note by writing in the words "On demand" stamping the date, June 4, 1908, on the note, and filling the blank space for the amount with $1,420.20; that he made no inquiry of appellee concerning his instructions to Massie as to filling out these blanks, and that Massie afterward paid $455.68 on the note, which payment was endorsed thereon.

It is contended on behalf of appellee that he was not liable on said note for the reason that at the time of the signing of the same by him and its delivery to Massie, it was agreed that said note was to be filled in for about $300 or $350, and that it was to be given to buy some cattle to make out a load. On behalf of appellants it is contended that at the time of the execution of the note by appellee, either that nothing was said as to how the note was to be filled, or that Massie told him he wanted to straighten up at the Basco Bank; that he had a note there, and a little overdraft, but that nothing was said as to the amount of the note or the amount of the overdraft. Appellants contend, first, that the delivery of the note in blank, with the signatures of Massie and appellee thereto attached, to appellants, carried with it, by implication, *prima facie* authority to appellants to fill in the blanks necessary to complete the note, and when the same was filled in by their cashier the burden was cast upon appellee to overcome such *prima facie* authority by a preponderance of the evidence. Second, that when appellee signed the note as surety and delivered the same to Massie in blank, he thereby constituted Massie his agent to fill in the blanks necessary to complete the

note, and was bound by his acts even though the latter exceeded the authority given him, unless appellee has shown by a preponderance of the evidence that appellants knew that Massie had exceeded his authority. Third, that appellee having made Massie his agent to do whatever was necessary to be done to complete the note, the instructions given by Massie were those of appellee, his principal, and he was bound thereby notwithstanding Massie may have exceeded his authority or acted in bad faith with appellee, unless notice that Massie had exceeded his authority or had acted in bad faith was brought home to appellants by a preponderance of the evidence. Fourth, that inasmuch as Massie sent the note in question to the bank by mail without any instructions whatsoever, the bank had a right to fill in the note for the amount actually due.

Whatever may have been the rule prior to the enactment of the Negotiable Instruments Law of 1907, the liability of appellee must be governed by such statute.

The jury, who were the sole judges of the credibility of the witnesses and the weight to be given to their testimony, doubtless credited appellee rather than Massie upon their respective versions of the conversation between them at the time the appellee signed the note. The law must therefore be applied upon the hypothesis that the facts are as appear from the testimony of the latter.

Under section 14 of the Negotiable Instrument Act, where a negotiable instrument is wanting in any material particular, the person in possession has *prima facie* authority to complete it by filling up the blanks therein, but in order that such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given, and within a reasonable time. But if any such instrument, after completion, is issued or negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if

it had been filled up strictly in accordance with the authority given and within a reasonable time. Rev. Stat. 1909, p. 1535. Section 52 provides that a holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. *Ibid.* 1538.

The liability of appellee upon the note in suit must therefore turn upon the question as to whether or not, under the circumstances, appellants were holders of such note in due course, within the meaning of the statute quoted. We are of opinion that they were not. The note was not complete and regular upon its face when it was delivered to appellants' cashier. Boston Steel Co. v. Steuer, 183 Mass. 140. It therefore could not be enforced against appellee, unless filled up strictly in accordance with the authority given by appellee, and within a reasonable time. It is not contended that any direct authority was given by appellee to the cashier, nor is there any evidence in the record showing any authority was given to the cashier by Massie. It does appear that a letter of some character or nature was sent to the bank together with the note, but appellants were not permitted to show the contents thereof, having failed to introduce the necessary preliminary proof as to its loss. True it is that they attempted upon cross examination of the cashier, to show by him the loss of the letter, a search therefor, and its contents, but the court properly held that such inquiry was not proper cross examination. The testimony sought to be introduced would have been material and competent, but no attempt was made to introduce the same in the proper manner or at the proper

stage of the proceedings.  That appellants were deprived of the benefit of the evidence, if favorable, was the fault of counsel and not due to error on the part of the court.  It must therefore be assumed that the cashier filled the blanks without authority from appellee, direct or indirect, express or implied.  When he did so, without investigation or inquiry, it was at the peril of appellants, and the burden devolved upon them to show authority for so doing.  This they failed to do.  The foregoing view is not only warranted by the plain language of the statute, but is further supported by VanderPloeg v. Van Zuuk, 135 Iowa 350, where it is held that a payee who takes a note for past indebtedness, in which a blank has been wrongfully filled out, is not a holder in due course, within the meaning of the section in the Negotiable Instrument Law requiring blanks to be filled according to instructions, but providing that, if such an instrument, after completion, is negotiated to a holder in due course, he may enforce it, as if it had been filled up strictly in accordance with the authority given.  The Iowa and Illinois statutes upon this point are identical, except that the Iowa statute, in the fourth sentence, uses the language "is negotiated to a holder in due course," and the Illinois statute uses the words, "is issued or negotiated to a holder in due course," which difference does not affect the case at bar.

It is urged that certain of the instructions given by the court at the request of appellee, deprived appellants of the benefit of the *prima facie* case made by them in the introduction of the proof of the execution of the note, by placing upon them the burden of proving that the blanks in the note had been filled strictly in accordance with authority.  We do not understand the instructions in question as having that effect.  They simply apply the law to the facts without telling the jury where the burden of proof lies.  Moreover, appellants are estopped to raise the question by instruction No. 8, given at their request, in and by

which they assumed the burden of proof throughout the case. It is well settled that a party cannot be heard to complain of an instruction where he has procured one of like character to be given on his own behalf. Comerford v. Morrison, 145 Ill. App. 615. For the reason last stated, they cannot complain of the modification of their instruction No. 7. Appellants' instruction No. 9 was properly refused. While directing a verdict, it wholly ignored appellee's defense. Instruction No. 10 was properly refused, as there was no theory of the evidence upon which it could be properly based.

Appellants invoke the rule that when one of two innocent persons must suffer by the wrongful act of another, the loss must fall upon him who put it in the power of the person to commit the act which caused the loss. Appellants cannot be properly held to have been innocent parties within the meaning of the rule stated. They knew the note was incomplete in a most important particular, and proceeded without inquiry as to authority, to supply the missing terms. The rule is therefore inapplicable.

The judgment of the Circuit Court is affirmed.

*Affirmed.*