LIBERTY TRUST COMPANY *vs.* FRANK B. TILTON.

Suffolk.    January 15, 1914. — May 19, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Bills and Notes,* Holder for value.    *Negotiable Instruments Act.    Words,* "Immediate parties," "Negotiated," "Negotiation," "Holder."

If the payee of a promissory note is the holder of the note in due course, he is not one of the "immediate parties" to it within the meaning of R. L. c. 73, § 33.

Under the provisions of the negotiable instruments act contained in R. L. c. 73, §§ 31, 33, 69, if the payee named in a promissory note purchases it in complete form for value before maturity in good faith and without notice of any infirmity in title or otherwise, he is a person to whom it has been negotiated as the holder in due course; and he may recover on the note against an accommodation indorser, although, when such indorser signed the note, the amount was left blank and he indorsed it upon the agreement that it should not be delivered to the payee until it was indorsed also by another person and that the amount to be filled in should not exceed a certain sum, and both of these conditions were violated.

CONTRACT, against the indorser of a promissory note for $400 payable to the order of the plaintiff, made by Perley G. Tilton, dated October 3, 1912, and due six months after date. Writ in the Municipal Court of the City of Boston dated April 7, 1913.

In the Municipal Court the case was submitted upon an agreed statement of facts, the substance of which is stated in the opinion, to *Bennett,* J., who refused to rule that the plaintiff could not recover, and found for the plaintiff in the sum claimed. At the request of the defendant the judge reported the case for decision by the Appellate Division.

The Appellate Division made an order that the report be dismissed; and the defendant appealed.

*A. Mehlinger,* for the defendant.

*E. M. Shanley,* for the plaintiff, submitted a brief.

RUGG, C. J. One Perley G. Tilton signed a note to the order of the plaintiff and presented it complete in every respect except its amount, which was blank, to the defendant Frank B. Tilton, who for the accommodation of Perley G. Tilton signed it in blank on the back upon the express representation and agreement by Perley G. Tilton that the defendant's signature should not be oper-

ative nor the instrument be delivered unless and until one Leonard Grant also should sign on the back and that then it should be filled out for $200 and no more. Leonard Grant did not sign the instrument, the amount of $400 was filled in and the instrument, without the knowledge or authority of the defendant and in violation of the agreement between him and Perley G. Tilton, was delivered complete in form to the plaintiff, the payee, who took it for value in good faith and without knowledge of the agreement between the maker and the defendant. The question is whether the defendant is liable to the plaintiff.

This point has not been decided in Massachusetts.

It is plain that before the enactment of the negotiable instruments act the plaintiff could recover. The payee could be a *bona fide* holder for value without notice. *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140, 143, and cases cited. The signing in blank authorized the filling of the blank by the one to whom the signer delivered it, although the specific directions might not have been followed. *Androscoggin Bank* v. *Kimball*, 10 Cush. 373. This is the general common law rule. See cases collected in 23 Ann. Cas. 1008 to 1011, 13 L. R. A. (N. S.) 490, 492.

But, although the point now in issue has not been decided expressly in this Commonwealth, in principle it is covered by *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140, at 145. In that decision this case was put: The maker handed a check complete in every respect to her husband upon express instructions to deliver to the payee on her own account, but the check fraudulently was handed by the husband to the payee in payment of a debt due from him to the payee, and it was accepted in good faith by the payee. It was held that the payee under these circumstances was a holder in due course within R. L. c. 73, § 69. That case has been followed on the point that the payee of a negotiable instrument may be a holder in due course, as in *J. G. Brill Co.* v. *Norton & Taunton Street Railway*, 189 Mass. 431, 437, and *Lowell* v. *Bickford*, 201 Mass. 543, 545. See also *Fillebrown* v. *Hayward*, 190 Mass. 472, 480. The point there decided, viz., that a payee may recover of a party whose signature was put upon the instrument in its complete form, but whose instructions as to the delivery of the instrument have not been followed, does not reach precisely the facts in the present case. The point there decided in substance was that under

R. L. c. 73, § 33, where the instrument when signed by the party sought to be charged was complete as to its form, a payee might be a holder in due course, although the delivery was contrary to the instructions.

The effect of that decision was to hold that the words "immediate parties" as used in § 33, viz., "As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument," did not necessarily include the payee. Hence, "immediate parties" in that connection excludes a party who is a holder in due course. In such case these words must be confined to parties who are "immediate" to the conditions or limitations placed upon the delivery in the sense of knowing or being chargeable with notice of them. A payee who is a holder in due course is not an immediate party in the sense of that section. This result follows from holding that a payee may be a "holder in due course" as defined in § 69, because he could become such holder only on condition "4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument." Thus he could not be such holder unless the paper was "negotiated" to him. Therefore the word "negotiated" was held to describe the means by which a payee might acquire a note. It was given its common legal significance of concluded by bargain or agreement. *Palmer* v. *Ferry*, 6 Gray, 420, 423. *Everson* v. *General Accident, Fire & Life Assurance Co.* 202 Mass. 169, 172. A promissory note complete as to form and payable to a named person may be negotiated to that person by being sold to him or taken by him for value. This is the common and popular signification of the word. It was the sense in which it was used in the law merchant before the negotiable instruments act. Its meaning has not been changed by the act. That was in substance the decision in *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140.

The soundness of that decision in this respect is confirmed by other provisions of the act. "Negotiation" is defined by § 47, whereby it is provided that "an instrument is negotiated when it

is transferred from one person to another in such manner as to constitute the transferee the holder thereof." "Holder" is defined in § 207 to be "the payee or indorsee of a bill or note, who is in possession of it." The remaining sentence of § 47, *viz.*, "If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery," was not intended to include all the ways in which an instrument might be negotiated, nor to restrict the comprehensive terms of the preceding sentence. Plainly under these two sections a negotiable instrument payable to a named payee is negotiated when the physical possession of it is handed for value to the person named as payee. One effect of the last sentence of § 47 is to describe the method by which the person who first becomes holder may pass title. It does not comprehend all the ways by which an instrument may be negotiated.

The word "negotiate," being defined thus in the act and being given a definition in conformity to that attached to it by the common law before the passage of the act, it must be held to have the same meaning throughout the statute in the absence of a strongly countervailing context requiring a different signification. There is nothing in § 31 to indicate that it there was used in any different sense. That a payee becomes the owner of a note by negotiation was in the thought of the court when it was said in *Thorpe* v. *White*, 188 Mass. 333, at 334, "The note was put in circulation as a contract on delivery to the payee, who, upon acquiring title by its negotiation, thus regularly became a holder within the provisions of R. L. c. 73, § 69." The defendant, not otherwise a party to the instrument, having signed in blank before delivery, became liable as indorser to the payee. § 81.

It requires no discussion to show that, under the circumstances here disclosed, § 32 of the act has no bearing. The defendant transferred actual possession of the incomplete instrument to Perley G. Tilton. Thus it was "delivered" within the meaning of that section so far as the defendant was concerned. § 207.

The conclusion follows that the payee named in a promissory note, who purchases it complete in form for value before maturity, in good faith and without notice of any infirmity in title or otherwise, is a person to whom it has been negotiated as holder in due course, notwithstanding it was signed in blank by the party to

be charged, whose instructions as to the filling of blanks and the delivery have not been followed by the one to whom it was intrusted by him in its incomplete state.

This result is contrary to the reasoning of *Herdman* v. *Wheeler*, [1902] 1 K. B. 361. But doubt has been thrown upon that case by *Lloyd's Bank, Ltd.*, v. *Cooke*, [1907] 1 K. B. 794. That was a case in its essential facts exactly like the one at bar. The defendant signed his name on a blank piece of paper which he intrusted to another person with authority to fill it up for a certain amount payable to the order of the plaintiffs and deliver to it as security for an advance. The note was filled up for a larger amount than was authorized and the plaintiff advanced on it without notice. Without passing upon the soundness of the rule laid down in *Herdman* v. *Wheeler*, it was held that the defendant was estopped at common law from denying liability. Under this decision in its practical results the law of England, by invoking the doctrine of estoppel, is on the same basis as if *Herdman* v. *Wheeler* were overruled on this point.

The conclusion here reached is at variance also with *Vander Ploeg* v. *Van Zuuk*, 135 Iowa, 350. But that decision, rendered since *Boston Steel & Iron Co* v. *Steuer*, 183 Mass. 140, recognizes its inconsistencies with our case. Desirable as is uniformity of interpretation touching the negotiable instruments act by courts of the several states where it is in force, which is declared in *Union Trust Co.* v. *McGinty*, 212 Mass. 205, 208, we remain content with the principles laid down in *Boston Steel & Iron Co.* v. *Steuer*. The rational application of that principle decides this case. See in this connection 59 University of Penn. Law Rev. 477. *Manussier* v. *Wright*, 158 Ill. App. 214. *Union Trust Co.* v. *McCrum*, 145 App. Div. (N. Y.) 409, 412, affirmed in 207 N. Y. 721.

It was declared both in *Herdman* v. *Wheeler* and in *Vander Ploeg* v. *Van Zuuk* that the judges were "very reluctant to come to the conclusion" there reached. We feel that the result to which we are led by a chain of reasoning not developed in either of those cases is in conformity with the terms of the act, and, being in accordance with the common law, is highly desirable as not upsetting the general understanding and practice of the commercial world.

No error is shown upon the record.

*Order dismissing report affirmed.*