## Drumm Construction Company, Appellee, v. George S. Forbes, Appellant.

### Gen. No. 26,846.

1. BILLS AND NOTES—*when person is holder of check in due course.* Where plaintiff made arrangements with a third party to purchase a used automobile from defendant, no negotiations being had with defendant, and to pay for such automobile plaintiff drew a check in favor of defendant and delivered it to the third person who delivered it to defendant in payment of his own indebtedness, defendant, having no actual notice of the purpose for which the check was given, became a holder in due course and took the check free from equities existing between plaintiff and the third party.

2. BILLS AND NOTES—*when payee of check without notice of fraud not required to reimburse drawer.* Where the drawer of a check, payable to defendant, delivered it to a third person who fraudulently used it in the payment of his own indebtedness to defendant, the latter, having no notice of the fraud, should not, under the rule that where one of two innocent parties must suffer by the acts of a third, he who enabled such third party to occasion the loss must sustain it, be required to reimburse the drawer of the check for the loss sustained.

Appeal from the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding. Heard in the Branch Appellate Court at the April term, 1921. Reversed. Opinion filed February 14, 1922. Rehearing denied February 25, 1922.

TENNY, HARDING & SHERMAN, for appellant; HARRY A. PARKIN and MACK C. WYLIE, of counsel.

CHARLES M. HAFT, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

By this appeal the defendant, Forbes, seeks to reverse a judgment for $950 entered against him in the municipal court of Chicago in a fourth-class action tried before the court without a jury, wherein plaintiff claimed that defendant was indebted to it for money had and received in the sum of $950.

On the trial plaintiff introduced a check for $950, dated January 24, 1919, drawn on a Chicago bank, payable to the order of George S. Forbes, and signed by plaintiff, by H. A. Drumm, treasurer. The check bore the indorsement of Forbes and he admitted that he had received the amount thereof. Drumm, plaintiff's only witness, testified that the check was obtained from him on the day of its date by one Howard I. Lamberton upon the latter's representation that he would buy for the witness an used automobile from Forbes; that he (Drumm) never got the automobile; that plaintiff never received anything for the check and never received back the amount thereof; that 2 or 3 days before he delivered the check he talked with Lamberton about the proposed purchase, and that the proposition then submitted to him was that he could secure said used automobile upon payment of $950 in cash and the proceeds of another automobile, owned by him and which Lamberton was selling for him; that before giving the check to Lamberton he did not talk with Forbes; and that the first time he talked with him about the transaction was in May, 1920, about 16 months after Forbes had cashed the check, at which conversation Forbes said that the check had been given to him by Lamberton in payment of a debt which Lamberton owed him. At the conclusion of plaintiff's evidence defendant moved for a directed verdict in his favor but the motion was denied.

Defendant, who was the only witness called in his behalf, testified that Lamberton had borrowed money from him for the purpose of buying an used automobile and had given him a note for $950, secured by a chattel mortgage on an automobile owned by Lamberton; that when the note became due Lamberton gave him a check to pay the note, but payment of the check was refused because of "not sufficient funds"; that thereupon he called upon Lamberton, who said to him, "If you will wait here a few minutes I will have a

check from the Drumm Company and with it I will pay you in full''; that shortly thereafter a man came into the room, walked over to Lamberton, and gave him the check in question and Lamberton in turn delivered it to him (Forbes), saying: "That is Mr. Drumm that you just saw me talking to; he just gave me this check"; that thereupon he (Forbes) gave back to Lamberton the note and chattel mortgage, and that while Drumm was in the room he (Drumm) did not say anything to Forbes or Forbes to Drumm.

At the conclusion of all the evidence defendant renewed the motion for a directed verdict in his favor, but the motion was again denied, and thereupon the court found the issues for the plaintiff, assessed its damages at the sum of $950, and entered the judgment appealed from.

Counsel for defendant contend, in substance, that the judgment should be reversed (1) because plaintiff failed to prove that defendant knew or had notice that Lamberton, who was plaintiff's agent and intrusted with the check, was acting in violation of his authority; (2) because the mere fact that defendant was named as payee in the check did not put defendant upon such notice, for the reason that the payee of a negotiable instrument, who receives it in good faith from an agent of the drawer in payment of said agent's pre-existing debt, is a holder in due course, and takes the instrument free from equities between the drawer and said agent; and (3) because, assuming that Lamberton acted fraudulently, the loss must fall, as between the two innocent parties, upon the plaintiff corporation, which by its acts clothed Lamberton with the *indicia* of ownership of the check and put it in his power to commit the fraudulent act.   Counsel for plaintiff contends, in substance, that under the provisions of the Negotiable Instruments Law, defendant, as payee of the check in question, although he became a "holder" thereof, was not a "holder in due course"

and did not take the check free from existing equities between the drawer and Lamberton.

In section 190 of the Negotiable Instruments Law of Illinois (Hurd's Rev. St. 1919, ch. 98, sec. 208 [Cahill's Ill. St. ch. 98, ¶ 213]) the word "holder," as used in the act, is defined to mean "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." In sections 52, 56, 57, 58 and 59, of said Law [Cahill's Ill. St. ch. 98, ¶¶ 72, 76, 77, 78, 79] it is provided:

"Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions:

1. That the instrument is complete and regular upon its face.

2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

3. That he took it in good faith and for value.

4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

"Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

"Sec. 57. A holder in due course holds the instrument free from any defect of title or prior parties, and free from defenses available to prior parties among themselves, except * * * (certain enumerated defects and defenses apparently not here applicable.)

"Sec. 58. In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. * * *

"Sec. 59. Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument

was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course.   *   *   *''

In sections 16 and 30 of said Law [Cahill's Ill. St. ch. 98, ¶¶ 36, 50] it is provided:

"Sec. 16.   Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between the immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument.   But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him, is conclusively presumed.   And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

"Sec. 30.   An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery."

Counsel for plaintiff, in support of his contention that defendant, as payee of the check, cannot be considered as a "holder in due course" thereof by reason of the provisions of the Negotiable Instruments Law adopted by many States of the Union, including Illinois, cites among others the cases of *Vander Ploeg v. Van Zuuk*, 135 Iowa 350; *Builders Lime & Cement Co. v. Weimer*, 170 Iowa 444; *Bowles Co. v. Clark*, 59 Wash. 336; *Bank of Gresham v. Walch*, 76 Ore. 272; *St. Charles Sav. Bank v. Edwards*, 243 Mo. 553;

*Southern Nat. Life Realty Corporation v. People's Bank of Bardstown*, 178 Ky. 80. In the *Van Zuuk* case (135 Iowa 350), the facts were in substance that the defendants, Albertus Van Zuuk and B. Van Zuuk, were copartners in business with one Pothoven; that upon the representation of Pothoven that he might within a short time find it necessary to raise $200 for temporary use in the business, and upon his request, the two defendants affixed their signatures to a *blank* promissory note, and Pothoven also affixed his signature thereto as a joint maker; that thereafter Pothoven, being indebted on his *individual* account to the plaintiff, Vander Ploeg, on a note for about $2,000, inserted plaintiff's name as payee, $2,000 as the amount to be paid and the rate of interest, and delivered the instrument, filled out by him without authority, to plaintiff, who surrendered to him the past due obligation. Plaintiff brought suit on the note and appealed from a judgment upon a directed verdict in favor of the two defendants. The Supreme Court of Iowa affirmed the judgment, and in the opinion stated that the facts presented "the simple case of a note wrongfully filled out and delivered by one of the makers to the payee, without notice to the payee that the instrument as delivered is not filled out in accordance with the authority given by the other makers to the one who thus fills it out and delivers it." After making reference to various sections of the Negotiable Instruments Act of Iowa, which are substantially the same as in the Illinois Act, the court said (p. 353): "It seems to us under these definitions and the applications thereof that the plaintiff was a holder of the note, but not a holder in due course. The latter term seems unquestionably to be used to indicate a person to whom after completion and delivery the instrument has been negotiated. * * * (p. 354). In other words, we think that 'holder in due course' should be construed as applicable only to one who takes the in-

strument by negotiation from another who is a holder. Certainly, in the case before us, Pothoven was not a holder of a promissory note, for as the instrument was delivered to him it was not a note at all, but only a blank form of a note with the makers' names affixed. * * * (p. 355)   We do not mean to say that in no case can the person named as payee in a negotiable instrument be the holder thereof 'in due course.' " And the court reached the conclusion (p. 358): "That, under the statute, plaintiff, being not a holder in due course, but the person to whom the note was made payable, and to whom its delivery as an effective instrument was first made, took it subject to the defense that Pothoven had no authority to fill in $2,000 as the amount of the note and deliver it to plaintiff." The rulings in the other cases cited by plaintiff's counsel tend to support his contention.

Our attention has not been directed to any case in the Supreme Court of Illinois where the same contention has been discussed and the point decided. But the point has been considered exhaustively by the Supreme Court of Massachusetts, in which State the Negotiable Instruments Act is substantially the same as the Illinois Act. And counsel for defendant, in support of their second contention above mentioned, cite many cases including the Massachusetts cases of *Boston Steel & Iron Co. v. Steuer*, 183 Mass. 140; *Liberty Trust Co. v. Tilton*, 217 Mass. 462; and *National Investment & Security Co. v. Corey*, 222 Mass. 453.

In the *Steuer* case, *supra*, it appears that a woman handed to her husband her check for a certain amount, made payable to à certain person, with instructions to the husband to deliver the check to said person in payment of a debt to become due from her to said person; that thereafter the husband fraudulently delivered the check to said person in payment of a debt *due from him* to said person; and that the check was accepted by said person (the payee) in good faith in payment

of the husband's debt. It was held that under such circumstances (p. 143): "The payee of the check is a bona fide purchaser of the check for value, without notice, and the drawer could not set up her husband's fraud in defense of the check, nor maintain an action for money had and received after payment of it on discovering the fraud"; that "the fact that the plaintiff is the payee of a negotiable security does not prevent him from becoming a bona fide purchaser of it at common law, with all the rights incident to a purchaser for value thereof without notice"; and that "payment of a pre-existing debt makes the holder a purchaser for value in this commonwealth was settled law before the Negotiable Instruments Act was enacted." It was further stated in the opinion (p. 144) that the check in question was given after the Negotiable Instruments Act went into effect in Massachusetts and is governed by the provisions of that act, and that under said act plaintiff "is a holder in due course" of said check.

In the *Tilton* case (217 Mass. 462), it appears that one Perley G. Tilton signed a note to plaintiff's order and presented it complete in every respect except its amount, which was blank, to the defendant Frank B. Tilton, who for the accommodation of Perley G. Tilton signed it in blank on the back upon the express representation and agreement by Perley G. Tilton that the defendant's signature should not be operative nor the instrument be delivered unless and until one Leonard Grant also should sign on the back and that then it should be filled out for $200 and no more; that Grant did not sign the instrument; that the amount of $400 instead of $200 was filled in; and that the instrument, without the knowledge or authority of the defendant and in violation of the agreement between him and Perley G. Tilton, was then delivered complete in form to the plaintiff, the payee, who took it for value in good faith and without knowledge of the agreement

between the maker and the defendant.  It further appears that plaintiff, the payee, sued the defendant, Frank B. Tilton, the indorser, and recovered a judgment for $400 against him, upon the agreed state of facts as above outlined, in the municipal court of Boston, and defendant finally appealed to the Supreme Court of Massachusetts where the judgment was affirmed.  The court said in its opinion (p. 463) that "the question is whether the defendant is liable to the plaintiff"; that, while the point had not been expressly decided in Massachusetts, in principle it was covered by the *Steuer* case (183 Mass. 140); that the point there decided was in substance that, under section 33 of the Negotiable Instruments Act of Massachusetts (identical with section 16 of the Illinois Act [Cahill's Ill. St. ch. 98, ¶ 36]) "where the instrument when signed by the party sought to be charged was complete as to its form, a payee might be a holder in due course, although the delivery was contrary to the instructions"; that the effect of that decision was to hold that the words "immediate parties," as used in said section 33, "did not necessarily include the payee," and that "a payee who is a holder in due course is not an immediate party in the sense of that section"; that "this result follows from holding that a payee may be a 'holder in due course,' as defined in section 69 of the Massachusetts Act (substantially the same as section 52 of the Illinois Act [Cahill's Ill. St. ch. 98, ¶ 72]), because he could become such holder only on the condition, mentioned in subsection 4 thereof, 'That at the time it was negotiated to him he had no notice of any infirmity in the instrument' "; that "thus he could not be such holder unless the paper was 'negotiated' to him"; that "the word 'negotiated' was held to describe the means by which a payee might acquire a note"; that "a promissory note complete as to form and payable to a named person may be 'negotiated' to that person by being sold to him or taken

by him for value"; that "this is the common and popular signification of the word," and was used in that sense before the passage of the Negotiable Instruments Act, which act has not changed its meaning; and that the above was in substance the decision in said *Steuer* case. And the court in its opinion further said (p. 464) that the soundness of the decision in the *Steuer* case in this respect "is confirmed by other provisions of the act"; that " 'negotiation' is defined by section 47 of the Massachusetts Act (identical with section 30 of the Illinois Act, Cahill's Ill. St. ch. 98, ¶ 50) whereby it is provided that 'an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof' "; that the word " 'holder' is defined, in section 207 of the Massachusetts Act (as in section 190 of the Illinois Act [Cahill's Ill. St. ch. 98, ¶ 213]), to be 'the payee or indorsee of a bill or note who is in possession of it' "; and that the remaining sentence of section 47, viz., " 'If payable to bearer it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery,' was not intended to include all the ways in which an instrument might be negotiated, nor to restrict the comprehensive terms of the preceding sentence. Plainly under these two sections a negotiable instrument payable to a named payee is negotiated when the physical possession of it is handed for value to the person named as payee." And the court reached the conclusion (p. 465) that "the payee named in a promissory note, who purchases it complete in form for value before maturity, in good faith and without notice of any infirmity in title or otherwise, is a person to whom it has been negotiated as holder in due course, notwithstanding it was signed in blank by the party to be charged, whose instructions as to the filling of blanks and the delivery have not been followed by the one to whom it was intrusted by him in

its incomplete state." And the court further said, in substance (p. 466), that, while the conclusion reached was at variance with the decisions in *Herdman v. Wheeler* ·[1902] 1 K. B. 361, and the *Van Zuuk* case, 135 Iowa 350, the court felt that such conclusion "is in conformity with the terms of the act, and, being in accordance with the common law, is highly desirable as not upsetting the general understanding and practice of the commercial world."

In the *Corey* case (222 Mass. 453), plaintiff, National Investment & Security Company, sued Corey and others, copartners in business, in the municipal court of Boston, for money had and received by the defendants for plaintiff's use, viz., the proceeds of two checks. The case was submitted on an agreed statement of facts and the trial court found for the defendants. On appeal to the Appellate Division that court reversed the finding and ordered judgment for the plaintiff for the amount of its claim. On further appeal to the Supreme Court the judgment of the Appellate Division was reversed and it was ordered that judgment be entered for the defendants. From the agreed statement of facts it appeared that two checks, one dated April 26, 1913, for $75, and one April 28, 1913, for $50, both payable to the defendants and signed by the Investment Company, by Charles E. Walker, treasurer, as maker, were delivered, each on the day of its date, to defendants by one Wilson, who was indebted to them, with instructions to credit the checks to his account; and that this was done and the checks were collected by defendants in the usual course of business. The Supreme Court in its opinion said (p. 454):

"The plaintiff now seeks to recover from the defendants the amount of the checks and interest thereon, on the ground that its treasurer had no authority to sign and deliver them. The plaintiff was not indebted to the defendants and had no business relations with them. The checks were received by the defend-

ants from Wilson in part payment of his pre-existing debt, and the defendants were therefore holders for value. * * * (*Boston Steel & Iron Co. v. Steuer,* 183 Mass. 140.) Although the defendants are the payees of the checks, they did not receive them from the plaintiff or Walker, its treasurer. The checks came to the defendants from Wilson, to whom, presumably, they were delivered as completed instruments, and they came to the defendants without notice of any infirmity. The payee of a check under such circumstances is a holder in due course. (*Liberty Trust Co. v. Tilton,* 217 Mass. 462; *Boston Steel & Iron Co. v. Steuer, supra.*) * * * The defendants are not 'immediate parties' under R. L. c. 73, sec. 33, making such parties to a negotiable instrument chargeable with notice of the conditions or limitations attached to it. * * * Wilson delivered to the defendants a completed check payable to them. There was nothing in the character of the instrument to charge them with knowledge or to put them on inquiry.''

In the present case it appears from the undisputed evidence that Forbes, the payee named in the check in question, did not receive the check from plaintiff or from its treasurer, Drumm, but received it from Lamberton, in whose possession it then was, in satisfaction of a pre-existing debt which Lamberton owed him; that at the time Forbes received the check he surrendered to Lamberton a chattel mortgage securing said debt; and thereafter Forbes indorsed the check and collected the amount thereof. Clearly, from the facts disclosed, Forbes became a holder of the check, in good faith and for value and without any actual knowledge of any infirmity. And on the question whether he became a ''holder in due course'' under the provisions of the Negotiable Instruments Law, we are disposed to follow the Massachusetts decisions above mentioned, and are of the opinion that under the facts disclosed Forbes, although named as payee in the check, became a ''holder in due course'' thereof, and took the same free from the equities existing between

plaintiff and Lamberton, and that plaintiff is not entitled to recover back from Forbes the proceeds of the check. The check was complete when Forbes received it from Lamberton and there was nothing in the character of the instrument to charge him with knowledge of any infirmity or to put him upon inquiry. And we are also of the opinion that plaintiff should not be allowed to recover back from Forbes the proceeds of said check in the present action because of the well-known rule that where one of two innocent parties must suffer by the acts of a third, he who enabled such third party to occasion the loss must sustain it.

Our conclusion is that under the undisputed facts the municipal court erred in entering the judgment appealed from and that it should be reversed, and it is so ordered.

*Reversed.*

BARNES and MORRILL, JJ., concur.