(No. 14790.—Judgment affirmed.)

THE DRUMM CONSTRUCTION COMPANY, Appellant, *vs.*
GEORGE S. FORBES, Appellee.

*Opinion filed October 21, 1922—Rehearing denied Dec. 13, 1922.*

1. BILLS AND NOTES—*statute does not materially change common law rule as to bona fide holder.* The Negotiable Instrument act, in defining a holder in due course, does not change the common law rule as to who is a *bona fide* holder, except in so far as it eliminates the requirement that the transfer must be in the regular course of business.

2. SAME—*when a payee may be regarded as a holder in due course.* A payee who accepts a check from one who is indebted to him but who is not the drawer of the check, without knowledge of any fraud which the debtor may have practiced to induce the drawer to write the check in favor of the payee, may be regarded as the holder in due course, free from any defenses claimed by the drawer, as any loss caused by fraudulent conduct of the debtor must fall upon the drawer, whose act in writing the check made the fraud possible.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.

CHURCH, HAFT & RORERTSON, for appellant.

TENNEY, HARDING & SHERMAN, (HARRY A. PARKIN, and MACK C. WYLIE, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a proceeding with reference to a judgment for $950 entered in the municipal court of Chicago in favor of appellant, the Drumm Construction Company, against appellee, George S. Forbes, tried in that court without a jury. The Appellate Court reversed the finding of the trial court,

and on a certificate of importance granted by the Appellate Court the case has been brought here by appeal.

There seems to be no dispute as to the facts. Some time in July, 1917, one Lamberton, who was an automobile salesman, proposed to Forbes that if Forbes would loan him some money they could both make considerable profit in buying automobiles from young men drafted for the war who wished to turn their cars into cash quickly and at reduced prices and Lamberton could sell the cars at an advance. It appears that Lamberton told Forbes that if Forbes would loan him $450 they could each make about $950 out of the transaction. Forbes testified that he told Lamberton the proposition looked all right to him and gave him the $450 and took back a note from him for $950, secured by chattel mortgage on Lamberton's car; that when the note became due Lamberton gave Forbes a check for that amount; that the check came back from the bank marked, "Not sufficient funds;" that on having his attention called to that fact Lamberton gave Forbes another check, telling him if he would put it through again it would be honored, but it again came back indorsed, "Not sufficient funds." Forbes testified that he then consulted an attorney, and together they called on Lamberton at the automobile salesroom where he was employed and asked for payment, and that Lamberton said, "If you will wait here for a few minutes I will have a check from the Drumm Manufacturing Company and with it I will pay you in full." It also appears that in January, 1919, Lamberton proposed to Harold A. Drumm, president of the appellant company, that he could secure for Drumm a used Essex automobile from Forbes for $950 and the proceeds from a small car Lamberton was selling for Drumm. Drumm agreed to the proposition, and on being telephoned to by Lamberton went to Lamberton's office in the automobile establishment and gave him a check on a Chicago bank for $950, signed by the appellant company, dated January 24, 1919, and payable

to the order of Forbes. It appears that Drumm came into the salesroom while Forbes and his attorney were there and that both the latter saw him come in and give Lamberton a check, and that immediately thereafter Lamberton came to Forbes and handed him the check and said, "The gentleman whom you just saw with me was Mr. Drumm and he gave me this check," and he thereupon turned the check over to Forbes and received back from Forbes his note and chattel mortgage. Afterwards the check was indorsed by Forbes and he received the money on it. Drumm testified that he never received the car from Lamberton.

The evidence shows that Drumm was president of the appellant company, which is engaged in the general contracting business in Chicago, and that Forbes was a broker on the Board of Trade of Chicago, and at the time of the above transactions they had never met. Drumm testified that he called at Forbes' office in Chicago several times but failed to find him; that he finally found him in May, 1920, and Forbes stated to him that there was no proposition to sell the Essex car to Drumm but the check was for a debt owed by Lamberton to him. After this interview with Forbes, Drumm commenced this action in the municipal court.

Section 52 of the Illinois Negotiable Instrument act provides: "A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (2 Hurd's Stat. 1921, p. 2166.)

305—20

Appellant contends that Forbes was not a "holder in due course;" that the statute states that to constitute such a holder the instrument must have been "negotiated to him;" that section 30 of said act states that "an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; if payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery." The argument is, that as the check was made payable to Forbes and handed by Lamberton to Forbes it was not "negotiated," as the term is used in the statute. Section 57 of said act provides that "a holder in due course holds the instrument free from any defect of title or prior parties and free from defenses available to prior parties among themselves," with certain exceptions. The act in using the term "holder in due course" used it as an equivalent for the old expression, *"bona fide* holder for value without notice." (8 Corpus Juris, 464.) The act, in so far as it defines a holder in due course, does not change the common law rule as to who is a *bona fide* holder, except, perhaps, by eliminating the requirement that the transfer must be in the regular course of business. (8 Corpus Juris, 465.) Section 58 of the act provides that "in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable."

There is some conflict in the authorities construing negotiable instrument acts similar in all material respects to the Illinois act as to whether the payee in a negotiable instrument may be a holder in due course. "At common law it was held that a payee may be a holder in due course although ordinarily he is not a *bona fide* holder, even where made payee as an agent of the real creditor." (8 Corpus Juris, 468; see, also, on this point, 3 R. C. L. 1031, to the same effect.) In Iowa, Missouri, Oregon and Washington the courts of those States have held that a payee is not

a holder in due course under their statutes.  On the other hand, it has been held in Alabama, Massachusetts and New York that a payee may be a holder in due course.  It has also been so held in Pennsylvania.  (8 Corpus Juris, 469, 470.)  In *Redfield* v. *Wells,* 31 Ida. 415, the court says: "We are of the opinion that a consideration of the different provisions of the Negotiable Instrument act, and particularly a careful application of the definition of the expressions 'holder,' 'holder in due course' and 'negotiate,' contained in the act, requires us to hold that a payee of a negotiable instrument may become a holder thereof in due course.  The better reasoned authorities support this view." (See to the same effect, *Boston Steel and Iron Co.* v. *Steuer,* 183 Mass. 140; *National Investment Co.* v. *Corey,* 222 id. 453.)  In a late work on negotiable instruments the author says:  "If a payee cannot be a holder in due course the universal mercantile custom and the overwhelming weight of authority have been upset by the act, and the *bona fide* payee of a bill of exchange remitted to him by a buyer of goods cannot recover against the drawer if the remitter has procured the bill from the drawer by fraud.  But no such construction of the act is warranted." (Brannan on Neg. Inst.—3d ed.—sec. 14.)  The author then cites authorities from various jurisdictions holding to the same effect, among others, *Goldberg* v. *Lewis,* 191 Ala. 356, where after a full discussion of the authorities in review of all the cases, English, Canadian and American, the conclusion is reached that under the act a payee may be a holder in due course.  This would seem to be in accordance with the ruling of this court under such circumstances in *Mix* v. *National Bank of Bloomington,* 91 Ill. 20, where this court held that the endorsee of a promissory note before its maturity, taking it as payment or security for a pre-existing debt, shall be deemed a holder for a valuable consideration in the ordinary course of trade and shall hold it free from latent defenses on the part of the maker.  See,

also, as to the same line of reasoning, *Worcester Nat. Bank* v. *Cheeney,* 87 Ill. 602.

The check here in question was complete when Forbes received it from Lamberton, and there was nothing in the character of the instrument to charge him with knowledge of any infirmity or put him on inquiry. It is clear from the facts disclosed in the record that Forbes became the holder of the check in good faith and for value and without any actual knowledge of any infirmity, and therefore by the weight of authority and sound reasoning the check in his hands was not subject to any of the defenses claimed by appellant. Moreover, we think a recovery cannot be had because of the well known rule that where there are two innocent parties in the case, the one who puts it in the power of a third party to commit the act causing it must bear the loss. (*Otis* v. *Gardner,* 105 Ill. 436; *Hemstreet* v. *Burdick,* 90 id. 444; *Mason* v. *Bauman,* 62 id. 76.) Assuming, as appears to be the case from the record, that Drumm and Forbes were both acting in good faith and that the fraud was perpetrated by Lamberton, who as the agent of Drumm gave the check to Forbes, the loss as between these two innocent parties, under the authorities, must rest upon Drumm because of the fact that his act in giving the check to Lamberton in the manner that he did made the fraud possible.

In view of our conclusion on the points already discussed it is unncessary to consider the other questions raised in the briefs.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*