### L. D. Read and C. P. Reynolds, Appellants, v. William S. Kerr, Appellee.

### Gen. No. 32,559.

Opinion filed June 20, 1928.

Louis P. Miller, for appellants.

Henry E. Jacobs, for appellee.

Mr. Justice Wilson delivered the opinion of the court.

The record in this case discloses that the plaintiffs, L. D. Read and C. P. Reynolds, recovered a judgment by confession on a certain promissory note against William S. Kerr, defendant, on the 24th of January, 1927, for the sum of $6,068.33. On February 16, 1927, the judgment was opened and defendant given leave to appear and defend, and the affidavit of William S. Kerr, filed in support of the motion to open said judgment, was allowed to stand as an affidavit of merits on behalf of the defendant.

The note upon which the judgment was based follows:

"Collateral Note
$5,000.00                                September 2nd, 1924
"Twelve Months after date, for Value Received, I Promise to Pay to the Order of J. W. Kingsbury and J. L. Roach the sum of Five Thousand Dollars, at Phillip State Bank and Trust Co. with interest at the

rate of six per cent. per annum after date, payable semi-annually, having deposited.

"Seventy Five Hundred Dollars in Stock of the Glen-Lunt Manor Corporation, Located 1327 to 1339 Lunt Ave., Chicago, Ill. which I hereby give the said J. W. Kingsbury and J. L. Roach agent or assignee, authority to sell, or any part thereof, on the maturity of this Note, or at any time thereafter, or before in the event of said securities depreciating in value, in the opinion of said J. W. Kingsbury and J. L. Roach at public or private sale, at the discretion of said J. W. Kingsbury and J. L. Roach or their assignee, without advertising the same, or demanding payment, or giving me any notice, and to apply so much of the proceeds thereof to the payment of this Note as may be necessary to pay the same, with all interest due thereon, and also to the payment of all expenses attending the sale of the said Stock including Attorney's fees; and, in case the proceeds of the sale of the said Stock shall not cover the principal, interest, and expenses, I promise to pay the deficiency forthwith, after such sale. And at any sale of said collaterals, or any part thereof, made by virtue hereof, it shall be optional with the legal owner or holder of this Note to bid for and purchase said collaterals or any part thereof.

                                    William S. Kerr."

Following this note and made part of it was the ordinary, usual clause authorizing a confession of judgment and waiving notice and providing for costs and attorneys' fees. This note bore the indorsement, "J. W. Kingsbury" "J. L. Roach."

The affidavit filed on behalf of the defendant Kerr, in support of his motion to open the aforesaid judgment, charged that he received notice of the writ of execution served to enforce said judgment and that it was the first knowledge he had of the confession of judgment against him; charged that the note was

procured by false representations made by J. W. Kingsbury and J. L. Roach, who were promoters of a certain co-operative building located in the city of Chicago, and sets forth certain statements that were made to him by said parties at the time that he purchased one of the apartments and gave the aforesaid note.

It is not necessary to go into detail as to the charges of fraud in the affidavit of merits on the part of Kingsbury and Roach because of the fact that these are not denied by plaintiffs.

The cause was tried before a jury and a verdict returned finding the issues against the plaintiffs and in favor of the defendant. Appeal was prayed and allowed to this court on the filing of bond and bill of exceptions. It is charged, however, in the aforesaid affidavit filed on behalf of the defendant, which was allowed to stand as an affidavit of merits, that the aforesaid note was received by the plaintiffs with full knowledge of the false and fraudulent representations charged in the affidavit of merits, and that it was not received before maturity nor for a valuable consideration and that the said plaintiffs were not the actual owners of said note.

We have searched the record and find that there was no testimony on behalf of the defendant to the effect that the plaintiffs had any knowledge of the false and fraudulent representations alleged; nor is there any evidence that it was not received by the plaintiffs for a valuable consideration; nor is there any evidence that it was received after maturity; nor is there any evidence that they were not the real and actual owners of the said note. On the other hand the testimony of the plaintiffs is clear and unimpeached that they paid the sum of $4,750 for said note on March 12, 1925, and the check given in payment for said note was introduced in evidence as Exhibit No. 2. The testimony of Read and Reynolds, plaintiffs herein, is unimpeached,

in that they had no knowledge of any of the alleged false and fraudulent representations made to the defendant and had no knowledge that the premises for which the note was given were defective or different in any respect from the alleged statements made to the plaintiffs. It is uncontradicted that the note was purchased before maturity and that a demand was made upon the defendant for the interest, which was refused.

No effort was made by the defendant Kerr, so far as the record shows, to rescind the agreement between himself and Kingsbury and Roach, but, on the other hand, the note was allowed to remain in the hands of plaintiffs, from the date of its purchase in March, 1925, until suit was started upon said note in January of 1927. The defendant did refuse, however, to pay the interest upon the same. The note in question was indorsed in blank and passed by delivery to the plaintiffs. *Palmer v. Nassau Bank,* 78 Ill. 380, where the court in its opinion says:

"Possession of a note indorsed in blank is evidence of title * * *. The filling up the blank indorsement was a mere matter of form."

*Y. M. C. A. Gymnasium Co. v. Rockford Nat. Bank,* 179 Ill. 599, where the court in its opinion says:

"In the case at bar the six notes in suit were placed in the hands of Parmele, bearing the endorsement of the payee, without any evidence whatever endorsed thereon or attached thereto that they were to be held by him otherwise than as absolute owner. He was thus clothed with every *indicia* of the legal title and absolute ownership by the party to whom they were made payable. It is well settled that such instruments endorsed in blank pass by delivery, the endorsement being treated as made to each subsequent transferee; also, that the negotiability of commercial paper does not cease with its maturity but may still be negotiated by endorsement."

In the case at bar, when the plaintiffs received the note indorsed in blank by Kingsbury and Roach, they received it in due course, and became the owners by delivery. The fact that said note was subsequently sold to another innocent purchaser and afterwards received back upon the return of the consideration, placed the note again in the hands of the plaintiffs and as such they held as bona fide owners and had all the rights that they would have had if they had not parted with the note but continued to retain possession of it after its first receipt from Kingsbury and Roach.

*Bradley v. Progressive Metal & Refining Co.,* 205 Ill. App. 552, where the court in its opinion says:

"It is the well-settled law of this State that a remote indorsee may avail of the title of any prior indorser, and if, as in the instant case, the first indorsement was valid and vested the title to the note in such indorsee, that title may be availed of in an action by any subsequent indorsee and holder of such note."

There is nothing in the Negotiable Instrument Act which changes or alters this rule. *Drumm Construction Co. v. Forbes,* 305 Ill. 303.

It is urged by counsel for the defendant that, by reason of the fact that the note on its face showed that it was secured by collateral security that it therefore is non-negotiable, but with this contention we are unable to agree. The Supreme Court of this State in the case of *Mumford v. Tolman,* 157 Ill. 258, in the statement of facts shows that in that case the note was upon a judgment which was given for certain shares of the Chicago Trust & Savings Bank and was payable on demand for $8,500 and, attached to the note, was the statement that the maker had deposited with the holder as collateral security, a certain certificate for shares of the Chicago Trust & Savings Bank stock, etc. and also a power of attorney to confess judgment. The court in its opinion says that the instrument sued on

is negotiable, and this too clearly to be made the subject of serious controversy.

To the same effect see *Victor v. Warner,* 248 Ill. App. 35, in which this court in its opinion said:

"In support of this proposition defendants contend that because the note is secured by a chattel mortgage it is not payable unconditionally. This contention finds no support in any of the terms of the note. It is payable for a sum certain and without condition. The chattel mortgage is collateral security only. If we were to concede the correctness of this contention, then every note secured by collateral would be non-negotiable, and bankers who hold such notes could not pass title by indorsement and delivery."

Not only is there no evidence in the record that the plaintiffs took said note with any knowledge of the alleged fraudulent statements made to procure its issuance, but, in this State the rule is much stronger and they would be entitled to be considered as bona fide holders for value even though there may have been a suspicion in their minds at the time of the purchase of said note that it was issued as a result of false and fraudulent statements.

The Supreme Court of this State in the case of *Matson v. Alley,* 141 Ill. 284, in its opinion says:

"The party who takes it (commercial paper) before due, for a valuable consideration without knowledge of any defects of title, and in good faith, holds it by a title valid against the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title,—that result can only be produced by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession."

It is urged on behalf of the defendant that, under the pleadings in this case, the burden was upon the plaintiffs to show that they received the note without knowledge of any fraud. The testimony bears out the fact that they did not have any such knowledge and, moreover, it is not the rule that the burden was upon them to disprove the fact as charged in the affidavit of merits. The court appears to have instructed the jury otherwise.

It is clear that under circumstances such as this, where a party places in circulation a note which is procured by fraud and where it does not affirmatively appear that the purchaser of the note took it with full knowledge, that it is better in the eyes of the law that he who started a note in circulation, although injured thereby, should suffer rather than some person who took it later on, relying upon its validity.

The rule is laid down in the case of *Drumm Construction Co. v. Forbes, supra,* wherein the court says:

"Moreover, we think a recovery cannot be had because of the well known rule that where there are two innocent parties in the case, the one who puts it in the power of a third party to commit the act causing it must bear the loss."

We are unable to perceive any force in the argument of counsel to the effect that, under the pleadings, the plaintiffs should not be entitled to recover. From the record in this case it appears that there was first a judgment obtained on the note by reason of the power of attorney to confess judgment therein contained. Later, upon motion of defendant to open said judgment for the purpose of allowing them to come in and defend, said judgment was opened and the affidavit in support of said motion was allowed to stand as an affidavit of merits. It was under this state of the pleadings that the parties proceeded to trial, with the judgment opened but not vacated. The

plaintiffs under the proof were the owners and holders of the note and produced said note on the hearing and introduced it in evidence, and the issues were made and tried upon the record so constituted. The defendants in their affidavit of merits did not deny execution nor delivery. We find no exception in the record on behalf of the defendant to the pleadings and will not, therefore, consider them upon review.

From the record and testimony in the case we find no evidence whatsoever to the effect that the plaintiffs purchased said note with knowledge of any fraudulent representations, but, on the other hand, are of the opinion that the verdict of the jury is manifestly against the clear weight of the evidence.

For the reasons expressed in this opinion the judgment of the trial court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Holdom, P. J., and Taylor, J., concur.